**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gianluca Zanna and Bridget Langston-Zanna, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Mohave County, a jural entity; Ron Walker and Jane Doe Walker, husband and wife; Tom Sockwell and Jane Doe Sockwell, husband and wife; Buster Johnson and Jane Doe Johnson, husband and wife; Gary Watson and Jane Doe Watson, husband and wife; and William Ekstrom and Jane Doe Ekstrom, husband and wife,<br><br>Defendants. | No. CV-10-8149-PCT-GMS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 39) and Plaintiffs' Motion for Summary Judgment (Doc. 41). For the reasons discussed below, Defendants' motion is granted and Plaintiffs' motion is denied.[1]

---

[1] Plaintiffs' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

On November 13, 2009, Gianluca Zanna and his wife Bridget Langston-Zanna ("Plaintiffs")—who are members of a political group called the Mohave Minutemen—attended a Town Hall presentation by Arizona Senator John McCain. The presentation was held inside the Board of Supervisors Auditorium at the Mohave County Administration Building ("MCAB"). (Doc. 40-1, Ex. H at 28; *id.*, Ex. G at 1). The MCAB houses many County departments, including the Assessor's Office, the Health Department, and the bioterrorism group. (*Id.*, Ex. B at 38:11–18). The Board of Supervisors auditorium is often used by the Board of Supervisors, the governing body of Mohave County, for public meetings. (*Id.*, Ex. G at 1).

Prior to Senator McCain's presentation, Zanna passed out flyers outside the entrance to the MCAB while his wife passed out flyers inside the auditorium. (Doc. 40-1, Ex. A at 58:7–60:25). These flyers were entitled "The Real John McCain" and scrutinized Senator McCain's voting record. (*Id.*, Ex. A at 49:14–25). At some point prior to the start of the meeting, security guards told Langston-Zanna that she was not allowed to pass out the flyers inside the building. When Zanna came into the building, his wife relayed to him the security guards' instruction. Zanna approached Defendant Buster Johnson—the member of the Mohave County Board of Supervisors who was apparently in charge of the meeting that night—and asked why they were not allowed to pass out the flyers. (Doc. 40-1, Ex. 62:4–64:23). Johnson told Zanna that the County "didn't allow any kind of politicking on County property" and that this had been the policy as long as he had been on the County Board of Supervisors. (Doc. 41-1, Ex. D at 23:6–7, Ex. F at 27:17–19). Plaintiffs immediately stopped handing out flyers. There is no evidence that any other groups were passing out flyers in the MCAB that day.

During his presentation, Senator McCain spoke on the topic of healthcare legislation. At the end of the presentation, Senator McCain passed a microphone around the room and asked the meeting attendees for their "questions, comments, or insults." (*See* DVD entitled "McCain Town Hall Meeting"). Various topics were raised by the attendees, including

Veterans' benefits, environmental concerns, and Wall Street greed. The last meeting attendee to get the microphone—who on the recorded DVD of the presentation appears to be Gianluca Zanna—scrutinized Senator McCain's voting record and then encouraged people at the meeting to "go to mohaveminutemen.com" for more information. (*Id.*). Nobody tried to stop this man from addressing the audience. After he finished his comments, he passed the microphone back to Senator McCain.

On August 13, 2010, Plaintiffs filed a four-count complaint against Mohave County and five different County officials, namely Buster Johnson, Ron Walker, Tom Sockwell, Gary Watson, and William Ekstrom (collectively "Defendants"). Plaintiffs brought counts against all Defendants for negligence, intentional infliction of emotional distress (IIED), and deprivation of their First Amendment rights pursuant to 42 U.S.C. § 1983. Plaintiffs also brought a defamation claim against Defendants Ron Walker and Tom Sockwell for "writ[ing] derogatory letters about [Plaintiffs] and publish[ing] them in local newspapers." (Doc. 1, ¶ 22, 46–52). Plaintiffs request compensatory, general, specific, and exemplary damages for each claim.

On June 6, 2011, Plaintiffs voluntarily dismissed all their claims against Defendants except for the § 1983 claim. (Doc. 36). Defendants now move for summary judgment against Plaintiffs on this remaining claim. (Doc. 39). Plaintiffs move for partial summary judgment on the claim, "requesting a ruling from the Court that, as a matter of law, the Town Hall meeting on November 13, 2009 created a designated public forum." (Doc. 41).

**DISCUSSION**

**I.    Legal Standard**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

1 judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is
2 genuine 'if the evidence is such that a reasonable jury could return a verdict for the
3 nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
4 (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof
5 at trial as to an element essential to its case, and that party fails to make a showing sufficient
6 to establish a genuine dispute of fact with respect to the existence of that element, then
7 summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan
8 Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477
9 U.S. 317, 322–23 (1986)).

**B.    Forum Analysis**

Even on government property, "[c]itizens are not entitled to exercise their First Amendment rights whenever and wherever they wish." *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 269 (9th Cir. 1995). "The Government, 'no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated.'" *U.S. v. Grace*, 461 U.S. 171, 178 (1983) (*citing Adderly v. Florida*, 385 U.S. 39, 47 (1966)). A court must perform "forum analysis to determine when a governmental entity, in regulating property in its charge, may place limitations on speech." *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 130 S. Ct. 2971, 2984 (2010). Where forum analysis is concerned, government property is sorted into four categories: "(1) a traditional public forum, (2) a designated public forum, (3) a limited public forum, or (4) a nonpublic forum." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011). *See also Martinez*, 130 S. Ct. at 2984 n. 11; *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).

**1.    Traditional Public Forum**

A traditional public forum is "government property that has been traditionally open to the public for expressive activity." *United States v. Kokinda*, 497 U.S. 720, 727 (1990). For instance, locations like streets and parks have been recognized as public forums, as they are open to the public and have traditionally been used for "communicating thoughts between

- 4 -

1  citizens, and discussing public questions." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1988)). That an area is "open to the public" is insufficient to establish it as a public forum. *Kokinda*, 497 U.S. at 729. The area must also be "dedicated to [ ] expressive activity." *Id.* at 730. To determine whether a public location is a traditional public forum, courts must look at "(1) the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area, (2) the area's physical characteristics, including its location and the existence of clear boundaries delimiting the area, and (3) traditional or historical use of both the property in question and other similar properties." *Wright*, 665 F.3d at 1135 (quoting *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100–01 (9th Cir. 2003)) (internal quotations omitted).

"[I]n traditional public forums . . . 'any restriction based on the content of . . . speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest.'" *Martinez*, 130 S. Ct. at 2984 n. 11 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)). Any restriction based on the time, place, or manner of speech in traditional public forums must be "content-neutral, [ ] narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

### 2. Designated Public Forum

A designated public forum is "government property that has not traditionally been regarded as a public forum" but which "is intentionally opened up for that purpose." *Summum*, 555 U.S. at 469. "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Id.* at 469–470. *See also Perry*, 460 U.S. at 45 ("The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.").

### 3. Limited Public Forum

"The government does not create a [designated] public forum . . . by permitting limited discourse." *Forbes,* 523 U.S. at 677) (citing *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)) (alteration in original). Rather, "by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects," governmental entities create "limited public forums." *Martinez*, 130 S. Ct. at 2984 (internal quotation omitted). *See also DiLoreto*, *v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999) (stating that a limited public forum is "a type of nonpublic forum that the government intentionally has opened to certain groups or to certain topics"). In limited public forums, "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Summum*, 555 U.S. at 470.

The reasonableness requirement "requires more of a showing than does the traditional rational basis test; *i.e.*, it is not the same as establish[ing] that the regulation is rationally related to a legitimate government objective." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 966–67 (9th Cir. 2002) (internal quotation omitted). Rather, there must be "evidence in the record" that "the restriction reasonably fulfills a legitimate need." *Id.* at 967. A viewpoint neutral restriction is not reasonable merely because it eliminates a minor nuisance for the government, but it is reasonable where it helps fulfill the purpose of the forum. *Compare Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943) (holding that one's right to distribute literature cannot be withdrawn based on "the minor nuisance for a community of cleaning litter from its streets"), *with Krestan v. Deer Valley Unified School District*, 561 F. Supp. 2d 1078, 1092 (D. Ariz. 2008) (holding that "it is reasonable for [a school] to place restrictions on the number of days during which students can distribute leaflets" because "[o]rder and appearance are no doubt important to [the school's] educational purpose."). Failure by the government to enact simpler available alternatives suggests that the enacted restriction is unreasonable. *Sammartano*, 303 F.3d at 967.

A restriction is viewpoint neutral where it "'serves purposes unrelated to the content of expression' and only incidentally burdens some speakers, messages, or viewpoints." *Alpha*

- 6 -

1  *Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 800 (9th Cir. 2011) (quoting *Martinez*, 130
2  S. Ct. at 2994). In other words, a viewpoint neutral policy does not "suppress expression
3  merely because public officials oppose the speaker's view." *Wright*, 665 F.3d at 1134
4  (quoting *Preminger v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008)).

5  **II.   Legal Analysis**

6        Plaintiffs claim that Defendants violated their First Amendment rights by "prohibiting
7  political activity and/or the dissemination of political information on county property used
8  as a public forum." (Doc. 1, ¶ 42). Plaintiffs do not argue that the MCAB is a traditional
9  public forum, or that individuals have historically been permitted to leaflet inside the
10 building. Plaintiffs instead contend that the County made the MCAB a designated public
11 forum on November 13, 2009 when it "purposefully invited and allowed Senator John
12 McCain to speak at the Administrative building regarding health care issues . . . . [and]
13 opened the floor to Mr. McCain's [constituents] to comment and ask questions." (Doc. 41
14 at 4). Defendants, meanwhile, contend that the McCain meeting did not turn the MCAB into
15 a designated public forum, arguing that the meeting was "highly structured" and that the
16 County was not opening up the building for public discourse. (Doc. 39 at 7).

17       "The government does not create a [designated] public forum . . . by permitting limited
18 discourse." *Arkansas Educ. Television Com'n v. Forbes,* 523 U.S. 666, 677 (1998) (citing
19 *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985))
20 (alteration in original). Accordingly, the government can "open[ ] property limited to use by
21 certain groups or dedicated solely to the discussion of certain subjects" without speech
22 restraints on such property being subject to strict scrutiny. *Martinez*, 130 S. Ct. at 2984. For
23 instance, in *Kindt v. Santa Monica Rent Control Bd.*, the Ninth Circuit held that due to the
24 "highly structured nature of city council and city board meetings," such meetings are best
25 classified as nonpublic or limited public forums, even where the city sets time aside in such
26 meetings for public comment. 67 F.3d 266, 270, 271 (9th Cir. 1995). Like the city council
27 meetings at issue in *Kindt*, the Senator McCain meeting was highly structured. After
28 Supervisor Johnson greeted the audience to begin the meeting, he turned the time over to John

- 7 -

Salem, the Mayor of Kingman, Arizona, who introduced Senator McCain by reading a short biography. (*See* DVD entitled "McCain Town Hall Meeting"). Senator McCain then gave a presentation to the attendees on healthcare legislation in Congress. (*See id.*). Although the meeting's attendees were allowed to ask questions and make comments following the Senator's presentation, periods of a structured meeting set aside for public participation do not, without more, transform a nonpublic or limited public forum into a public one. *See Kindt*, 67 F.3d at 270–72. The McCain meeting is therefore best classified as a limited public or nonpublic forum. In such forums, restraints imposed on speech activities like leafleting are permissible so long as the restraints are (1) "viewpoint neutral" and (2) "reasonable in light of the purpose served by the forum." *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 189 (2007).

First, any restraints placed upon speech by the County must have been "viewpoint neutral." *Id*. Plaintiffs contend that the fact that other meeting attendees were allowed to ask questions on a variety of topics whereas Plaintiffs were precluded from passing out flyers scrutinizing Senator McCain's voting record shows that Defendants discriminated against Plaintiffs' specific viewpoint. (Doc. 50 at 6–7). Supervisor Johnson has testified, however, that he never looked at their flyer and did not know what its contents were when he told Zanna that Plaintiffs were not allowed to pass it out. (Doc. 40-1, Ex. C at 27:20–28:2). Plaintiffs do not contend otherwise. Moreover, Plaintiffs have not presented evidence that other meeting attendees were permitted to pass out flyers. Nor have Plaintiffs presented evidence that they were prohibited from commenting on Senator McCain's voting record during the meeting's question and answer period. To the contrary, as discussed above, one of the meeting attendees was allowed to make a comment scrutinizing the Senator's voting record and encouraging other meeting attendees to visit the website of the Mohave Minutemen—the same organization with which Zanna is associated. (*See* DVD entitled "McCain Town Hall Meeting"). In short, the County restricted a particular manner of speech at the meeting—namely leafleting—but did not target Plaintiffs' particular viewpoint. A manner regulation, without more, does not constitute viewpoint discrimination. *Perry*, 460

U.S. at 46 (stating that in nonpublic forums, "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated" and can impose "time, place, and manner regulations").

In addition to being viewpoint neutral, any speech restraints imposed by the County at the McCain meeting must have been "reasonable in light of the purpose served by the forum." *Davenport*, 551 U.S. at 189. *See also Cornelius*, 473 U.S. at 808 ("The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation."). The purpose of Senator McCain's Town Hall was to allow him to inform his constituents about healthcare legislation in Congress and to give them the opportunity to ask him questions. Given such purpose, a prohibition on leafleting in the auditorium during the meeting was a reasonable speech restraint. To allow the unfettered distribution of flyers and other political information inside the building during the meeting would tend to distract attendees and interfere with the Senator's ability to effectively communicate with his constituents. Moreover, the Supreme Court has held that so long as "access barriers are viewpoint neutral . . . it [is] significant that other available avenues for the group to exercise its First Amendment rights lessen the burden created by those barriers." *Martinez*, 130 S. Ct. at 2991. As discussed above, the question and answer session following the Senator's presentation was an alternative avenue available for Plaintiffs to express their viewpoint—and at least one member of the Mohave Minutemen was allowed to so participate. This alternative avenue lessened any burden on Plaintiffs created by the leafleting barrier.

## CONCLUSION

Because Defendants' restriction on leafleting at the McCain meeting was both viewpoint-neutral and reasonable, Defendants are entitled to judgment against Plaintiffs as a matter of law.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 39) is granted.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 41) is denied. The Clerk of Court is directed to **terminate this action**.

DATED this 6th day of September, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge